IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CRIMINAL CASE NO. 2:04-cr-00027-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ROGER DALE CHARLES, II, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for a Reduced Sentence under 18 U.S.C. § 3582(c)(1) [Doc. 141].

I. BACKGROUND

Between July and December of 2003, law enforcement authorities received numerous tips that the Defendant Roger Charles, II, was distributing crack cocaine from his home in Murphy, North Carolina. [Doc. 138: PSR at ¶¶ 7-14]. Accordingly, on December 19, 2003, officers executed a search warrant at the residence. [Id. at ¶ 14]. During this search, law enforcement found 54.7 grams of crack cocaine, along with small amounts of Oxycodone, methadone, Alprazolam, morphine, and marijuana. [Id. at ¶

15]. Officers also located and seized two firearms and over $3,000.00 in cash. [Id.].

The Defendant was charged in a Bill of Indictment with possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (a)(2) (Count One); use and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two); and (3) knowing possession of firearms having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g) (Count Three). [See Doc. 2: Indictment]. The Government filed an information pursuant to 21 U.S.C. § 851, notifying the Court and the Defendant the Government intended to seek an enhanced penalty based on the Defendant's prior felony drug offenses. [Doc. 3: § 851 Information]. The Defendant proceeded to a jury trial, and on February 15, 2005, a jury found the Defendant guilty of the drug-trafficking offense set forth in Count One and the felon-in-possession offense set forth in Count Three; the jury acquitted him of the § 924(c) offense set forth in Count Two.[1] [Doc. 55: Jury Verdict]. The jury also found that at least 50 grams of crack cocaine were attributable to the Defendant. [Id.].

---

[1] The Honorable Lacy H. Thornburg presided over the Defendant's trial. After Judge Thornburg's retirement in 2009, this matter was reassigned to the undersigned.

In advance of sentencing, the Court's probation office submitted a presence report, which calculated a preliminary adjusted offense level of 33 based on the Defendant's responsibility for 54 grams of crack cocaine. [Doc. 138: PSR ¶¶ 29, 34, 46]. The probation office also found that the Defendant was both a career offender and an armed career criminal based on his prior felony convictions for battery on a law-enforcement officer, armed burglary, and escape. The career-offender guideline provided for an adjusted offense level of 37. [Id. at ¶ 47]. Based on a total offense level of 37 and a criminal history category of VI, the Sentencing Guidelines advised a range of between 360 months and life imprisonment. [Id. at ¶ 110]. The Defendant faced a statutory mandatory minimum of 20 years and a maximum of life in prison for the drug-trafficking offense and a statutory mandatory minimum of 15 years and a maximum of life in prison for the felon-in-possession offense. [Id. at ¶ 109].

On June 17, 2005, the Defendant was sentenced to 360 months' imprisonment on Counts One and Three, with such terms to run concurrently. [See Doc. 64: Judgment]. He is currently incarcerated at United States Penitentiary Florence ADMAX, and his projected release date is September 16, 2031.[2]

---

[2] See https://www.bop.gov/inmateloc/ (last visited Oct. 28, 2024).

In March of 2021, the Court denied the Defendant's motion for a reduction in his custodial sentence under § 404 of the First Step Act, but granted a reduction in his term of supervised release to eight years. [Doc. 124]. In denying his request for a reduction in his custodial sentence, the Court noted that as of February 2021, the Defendant had committed 59 disciplinary infractions, including nine assaults, three of which resulted in serious injury; four instances of fighting; and ten instances of possessing a dangerous weapon. [Id. at 12].

The Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking a reduction in his sentence to time served. [See Doc. 141]. For grounds, the Defendant asserted that he suffers from medical circumstances warranting compassionate release; that he is serving an unusually long sentence; and that his wife is awaiting a heart transplant and needs a caregiver for herself and her seven-year-old child. [See id.]. The Government opposes Defendant's motion. [Doc. 145].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to

4

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the record indicates that the Defendant requested compassionate release from his warden on December 10, 2023, and that this request was denied on December 13, 2023. [Docs. 145-3, 145-4]. Accordingly, the Court will proceed to address the merits of the Defendant's request.

The Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons" if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy

statement sets forth the following list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence: (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the caregiver of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. Id. § 1B1.13(b)(1)-(6).

The Defendant first contends that he is entitled to release because the BOP is not providing him with Wellbutrin, a medication prescribed by his "mental health" doctor. [See Doc. 141 at 1]. It appears that this medication was prescribed to treat the Defendant's ADHD and depression, though he has provided no evidence that he has actually been diagnosed with either condition. [Id.]. As a primary matter, neither ADHD nor depression is an unusual or exceptional condition. Millions of Americans grapple with both every year. Additionally, as is relevant to § 1B1.13(b)(1), these conditions are not terminal, and the Defendant has not provided any evidence that they "substantially diminish" his ability to care for himself while imprisoned. Indeed, he has not provided *any* evidence demonstrating the nature or severity of his symptoms. Similarly, the Defendant has not provided any evidence that he was prescribed Wellbutrin to treat these conditions, that this medication is essential to his health, or that the BOP is denying it to him while providing it to similarly situated inmates. Therefore, the Court concludes that the Defendant has failed in establishing that his mental health conditions and/or the BOP's denial of Wellbutrin amount to extraordinary and compelling circumstances that could justify his early release.

The Defendant also argues that he "could" care for his wife, who is awaiting a heart transplant, and her seven-year-old daughter if he were

released. [Id. at 2]. As noted above, § 1B1.13 contemplates granting compassionate release where an inmate would be the only potential caregiver to an incapacitated family member, including his spouse or other immediate family member. See U.S.S.G. § 1B1.13(b)(3). Here, however, the Defendant has not provided any evidence that he is his wife's only potential caregiver, or that her condition is so incapacitating that she requires care from another. See, e.g., United States v. Brown, Crim. No. JKB-16-0427, 2022 WL 1664474, at *2-*3 (D. Md. May 25, 2022) (denying compassionate release because inmate failed to demonstrate that his father was incapable of self-care *and* that inmate was only possible caregiver). Similarly, he has provided no evidence that his wife is incapable of caring for her own daughter or suggesting that her daughter has no other caregivers. As the Defendant has not demonstrated that his release is the only way in which his wife and her daughter will obtain care that they need, this argument fails.

Next, the Defendant contends that he has a job and housing secured upon his release. [Doc. 141 at 2-3]. To be sure, these are positive developments for the Defendant, and they bode well for his successful reentry into society upon completion of his sentence. However, it is the Court's *expectation* that former inmates will work to integrate into society by

8

finding appropriate housing and employment upon their release. Therefore, there is nothing exceptional and compelling about the Defendant's post-release plans that warrants his early release.

Lastly, the Defendant argues that he would receive a significantly shorter sentence for his crimes if he were sentenced today. [See id. at 1-2]. As noted above, U.S.S.G. § 1B1.13(b)(6) provides that a Court may grant compassionate release, in the event of an "unusually long sentence," where a defendant has served at least ten years of his sentence and there has been a change in the law that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

The Government concedes that the Defendant's 360-month sentence is unusually long when compared to the average sentences of all federal offenders, and that he has served more than ten years of that sentence. It further agrees with the Defendant that the sentence that he likely would receive today is sufficiently disparate from the sentence he is currently serving because he would not be sentenced as a career offender. [Doc. 145 at 7-8]. The Government argues, however, that the Court should not find that the Defendant has shown an extraordinary and compelling circumstance based on § 1B1.13(b)(6) because the Sentencing Commission exceeded its

9

authority in promulgating that subsection to the extent that it allows non-retroactive changes in sentencing law to constitute extraordinary or compelling reasons for a sentence reduction. [Id. at 8].

Prior to § 1B1.13(b)(6)'s enactment, the Fourth Circuit held that non-retroactive changes in the law could constitute extraordinary and compelling reasons for compassionate release. See United States v. McCoy, 981 F.3d 271, 286-88 (4th Cir. 2020). The Court has continued to so hold after § 1B1.13(b)(6) took effect on November 1, 2023. United States v. Davis, 99 F.4th 647, 658 (4th Cir. 2024) (noting that the amendments "serve to confirm and amplify [McCoy]" and remanding for the district court to consider the defendant's "argument that he no longer qualifies as a career offender"). As such, "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence." Id.; see also United States v. Worlds, No. 21-7535, 2024 WL 3439422, at *1 (4th Cir. July 16, 2024) (remanding to consider change in sentencing law where defendant was sentenced as career offender but would not be today); United States v. Smith, No. 22-6439, 2024 WL 3042894, at *1-*2 (4th Cir. June 18, 2024) (same). Thus, the Government's arguments that non-retroactive changes in sentencing laws cannot support a request for compassionate release are unavailing.

Here, without a career offender enhancement, the Defendant's advisory guidelines range would likely be calculated as being between 120 to 150 months.[3] This is sufficiently disparate from the sentence the Defendant is currently serving to amount to an exceptional and compelling reason for a reduction in his sentence. Having determined that the Defendant has demonstrated extraordinary and compelling reasons for his early release, the Court turns to the § 3553(a) factors to determine whether a sentence reduction is warranted.

Here, several factors weigh against a reduction in the Defendant's sentence. For instance, the nature of the Defendant's offense conduct is undoubtedly serious, as it involved the trafficking of dangerous drugs and the possession of firearms—a combination that is all too often deadly. [See Doc. 138 at ¶¶ 7-15]. This is compounded by the fact that the Defendant's minor children lived in the residence where he dealt drugs. [Id. at ¶ 18].

Additionally, without including the present offenses, the Defendant was assessed 18 criminal history points, well above the 13 criminal history points need to place in a criminal history category of VI. [Id. at ¶ 75]. His record

---

[3] If the Defendant were sentenced today, his base offense level for the drug-trafficking offense would likely be 24 based on his responsibility for 54 grams of crack cocaine. Two offense levels would likely be added for the felon-in-possession offense, resulting in a total offense level of 26. See U.S.S.G. § 3D1.4. Based on a total offense level of 26 and a criminal history category of VI, the advisory guidelines range would be 120 to 150 months' imprisonment.

11

demonstrates that he began committing serious crimes at age 15 and continued doing so until his present incarceration. [See id. at ¶¶ 51-73]. Additionally, many of the crimes he committed as an adult, including burglary, battery on a law enforcement officer, armed burglary with a deadly weapon, grand theft, resisting an officer with violence, possession of cocaine, and possession of narcotics paraphernalia, involved violence and drugs, just as his present offenses do. [Id.]. This pattern suggests that a substantial sentence was needed for the Defendant's present offenses to promote respect for the law, to afford adequate deterrence (particularly specific deterrence), and to protect the public from further crimes by the Defendant.

Further, the Defendant's performance while incarcerated has been abysmal. The Defendant has committed more than sixty disciplinary infractions, beginning in 2005 and continuing through this year. [See Doc. 145-1]. Many of these infractions involve violence, including possessing dangerous weapons, assaulting others, often causing serious injuries, fighting, and threatening to harm others, while others involve possessing intoxicating substances. [Id.]. His record of infractions while in prison make clear that he continues to pose a threat to the community.

The above notwithstanding, there are also factors here that counsel in favor of reducing the Defendant's sentence. For instance, the quantity of drugs attributed to the Defendant is not remotely among the higher that the Court has seen and there is some evidence in the record that Defendant's wife purchased the firearms, and that Defendant kept them only to protect his family. [Doc. 138: PSR at ¶¶ 20-21]. Additionally, the Defendant's sentence is more than double what he would likely receive if he were sentenced today, suggesting that it overstates the seriousness of his crimes and has resulted in an unwarranted disparity between how the Defendant and similarly situated defendants are being treated currently. Further, the Defendant has completed more than sixty educational courses while with the BOP, and more than thirty in the last four years, suggesting that he has (particularly recently) made some commendable efforts to rehabilitate himself. [Doc. 145-2].

On balance, the relevant § 3553(a) factors do not presently warrant a reduction of the Defendant's sentence to time served, as he requests. However, particularly considering the disparity between Defendant's sentence and that which he would likely receive if he were sentenced today,

a more modest reduction is appropriate.[4]  Therefore, the Court will exercise its broad discretion and reduce Defendant's sentence by four years, to a term of 324 months.

# O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for a Reduced Sentence under 18 U.S.C. § 3582(c)(1) [Doc. 141] is hereby **GRANTED IN PART** insofar as his sentence is hereby **REDUCED** by four years, to a term of **THREE HUNDRED AND TWENTY-FOUR (324) MONTHS.**

The Clerk of Court is respectfully directed to prepare an amended judgment consistent with this Order.

**IT IS SO ORDERED.**

Signed: November 5, 2024

Martin Reidinger
Chief United States District Judge

---

[4] If the Court reduced the Defendant's sentence to time served, he would be denied the benefit of the resources that the BOP provides during the step-down process aimed at helping inmates successfully reenter society.

14

Case 2:04-cr-00027-MR-WCM    Document 147    Filed 11/06/24    Page 14 of 14